IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings under Chapter 11 |
| PREVENTION LABORATORIES, LLC, | Case No. 09-40678 |
| Debtor(s). | |
| PREVENTION LABORATORIES, LLC, | |
| Plaintiff(s), | Adv. No. 10-4017 |
| v. | |
| JAMES ABBOTT, et al, | |
| Defendant(s). | |

OPINION

This matter is before the Court on a "Complaint to Determine Amount of Interest in Debtor," filed by Prevention Laboratories, LLC ("debtor"). Debtor, a pharmaceutical manufacturer, filed a chapter 11 on April 21, 2009. At the time of filing, the debtor had contracts with a large number of parties who are "unitholders" in Prevention. During the initial years of the company, some of these unitholders purchased units of ownership in the company. Most, if not all, of the units were purchased through the debtor's president, Jerry Douglas. The purchase agreement contained language that gave unitholders a right to demand that their units be repurchased at a 15% premium after one year. Other unitholders did not actually purchase units, but instead, were issued units for a variety of reasons – for example, as employee bonuses and for services rendered as independent consultants or contractors. These unitholders are referred to as "sweat equity holders."

The instant adversary proceeding was filed by the debtor against all of the unitholders (the monetary investors and the sweat equity holders). Count I of the complaint seeks a

1

declaratory judgment that all investors in Prevention Laboratories were never equity members; that the investors made unsecured loans to Prevention Laboratories at the time they were issued their units; and that the investors are now unsecured creditors who are owed the amount of their respective investments.  Count II seeks a determination of the amount of the claims of the monetary investors.  Exhibit B attached to the complaint shows the amount of debt each monetary investor is owed by the debtor.  The complaint then states that "[a]ny monetary investor who disagrees with the amount shown should file an answer to this complaint with the suggested affidavit contained in Exhibit B." Complaint, ¶ 22.  Count III seeks a determination of the amount of sweat equity claims and states that "[u]nless a Sweat Equity Holder files an answer to this complaint with the suggestion of attaching an affidavit such as Exhibit A and supporting documentation, the Sweat Equity Holder will NOT be deemed to be the holder of any claim in any amount against Prevention Laboratories, LLC." Complaint, ¶ 27 (emphasis in original).

A trial on the complaint was held on October 27, 2010.  At that time, the Court took the complaint under advisement and granted the parties thirty days to file motions and briefs on Count I of the complaint.  Counsel for the debtor, Mr. Antonik, and counsel for the Richardson Claimants, Mr. Shaw, filed motions for summary judgment with supporting briefs as to Count I.  The Court construes those as post-trial motions and briefs.

Debtor argues that the evidence presented at trial leads to only one conclusion: Prevention Laboratories did not abide by any operating agreement, or by state law, in attempting to add new members, i.e., the unitholders, to the company.  The debtor contends that under both the operating agreements and state law, admission of new members requires the unanimous consent of existing members.  According to the debtor, the existing members of Prevention

Laboratories never consented to the admission of new members and therefore, any "investment" was not and could not be a purchase of ownership units. Instead, the investment is an unsecured debt of Prevention Laboratories.

The Richardson Claimants - who requested a buy-back of their units with the 15% premium – argue that they are both equity security holders *and* unsecured creditors. They contend that their status as equity owners is represented by the number of units of ownership issued to them, while their status as unsecured creditors arises from the debtor's refusal to pay them back the amount of their investment plus 15%. In other words, the Richardson claimants contend that the debtor's failure to pay them pursuant to the buy-back agreement constituted a breach (or rejection) of that agreement, entitling them to damages. They further contend that a distinction should be made between those investors who exercised their buy-back option and those who did not. Since the Richardson claimants exercised the buy-back option, they argue that they are entitled to "dual status" as both equity owners and unsecured creditors. Likewise, any monetary investor who did not exercise the buy-back option is an equity holder only.

With respect to the debtor's argument that none of the unitholders are equity holders, the Richardson claimants argue that the certificates issued to them were accompanied by documents entitled "Receipt of Stock Purchase;" that the evidence showed that Prevention Laboratories' president, Jerry Douglas, regarded the unitholders as equity owners; and that the units issued to them are "securities" within the meaning of the Bankruptcy Code. In addition, they argue that the debtor failed to produce a valid operating agreement at trial and failed to produce any evidence to show that the unitholders are holders of unsecured debt.

The Court has reviewed the pleadings filed, the evidence presented, and the testimony of witnesses. Based on that review, the Court finds that the debtor has failed to sustain its burden of

proof on the complaint.  Specifically, with respect to Count I of the complaint, the debtor failed to produce sufficient evidence – documentary or otherwise - supporting its claim that the unitholders were merely loaning money to Prevention Laboratories, and are therefore unsecured creditors and not equity holders.  While the debtor claims that the operating agreement required the unanimous consent of existing members before new members could be admitted, the debtor failed to produce a complete and valid operating agreement, making it impossible for the Court to know what the operating agreement did in fact provide.   In addition, there was testimony that the debtor's records were in disarray.  Is it possible that the company *did* vote to authorize Mr. Douglas to admit new members by selling them units of ownership, and the record of the vote was lost or destroyed?  Were the existing members at least aware that Mr. Douglas was issuing units to hundreds of individuals?  What authority did he have to do so?  These questions were not answered at trial.  Notably, and inexplicably, Mr. Douglas was not called as a witness at the trial.  In fact, Mr. Douglas did not even make an appearance at the trial.

Alfred Sanders, the current CEO of the debtor and former attorney for the debtor, testified on behalf of the debtor.  He verified that the records were in disarray at the time he took over in 2009.  He also stated that he attempted to contact the former members to obtain a signed copy of the agreement.  He was unable to track down a signed copy.  It is equally telling to note that none of the former members were called to testify by the debtor regarding the authority to enter into the sale of additional memberships.

Mr. Sanders testified that he was a CPA and had formed numerous LLCs.  He further testified that he had reconciled the books and records of the debtor as best he could to track the inflow of investor payments from the investors/unitholders to the debtor's accounts.  This

increase in cash flow/capital had to be apparent to other unitholders who received the benefit of the investment/cash infusion.

Nicolas LeMay testified on behalf of himself and the Richardson claimants. He stated that he attended a member meeting in response to a Notice of Meeting he received from the debtor, and that Mr. Douglas, as well as several members of Prevention Laboratories, were present at that meeting. Mr. LeMay, along with the other members in attendance and the Richardson claimants, were given a ballot to elect managers/directors at that meeting. The ballot and meeting notice were produced as exhibits at the trial. The Court finds the testimony of Mr. LeMay to be very candid and credible.

Having found that the debtor failed to sustain its burden of proof, judgment is entered against the debtor on the complaint. The question of whether the Richardson claimants are entitled to "dual status" as equity holders and unsecured creditors was not raised in a cross-claim or counterclaim. The other defendants in this case were not properly noticed of that argument and accordingly, the Court makes no findings with respect to that issue.

With respect to the debtor's request in Counts II and III that the Court determine the amount of the claims of the monetary investors and sweat equity holders, the Court finds that resolution of those amounts can be made by examining the claims that have been filed and if necessary, by objecting to those claims. In this regard, the Court notes that the debtor filed a "List of Equity Security Holders" (which was subsequently amended) in the underlying bankruptcy case pursuant to Bankruptcy Rule 1007(a)(3). The "number of securities" for each holder is stated on the original and amended lists, and none of those amounts were designated as disputed or contingent.[1] Alfred Sanders signed a declaration under penalty of perjury that the

---

[1] Bankruptcy Rule 3003(b)(2) expressly states that "[t]he list of equity security holders filed pursuant to Rule 1007(a)(3) shall constitute prima facie evidence of the validity and amount of the equity security

5

lists of equity security holders were true and correct.  The amounts listed in the exhibits attached to the complaint and produced at trial, however, vary from the amounts set forth in the lists of equity holders.  To the extent the debtor has authority to do so, the debtor shall amend the schedules and lists in the underlying bankruptcy case to be consistent with the records of the debtor.

The Court hereby vacates any previous settlement orders relating to any count of the complaint *to the extent those orders are inconsistent with this decision*.  Nothing herein prevents the debtor from entering into a settlement with any unitholder on his or her claim, provided that proper notice and time for objecting are given to all creditors of the proposed settlement.

See Order entered this date.

ENTERED: January 24, 2011

                                          /s/ Laura K. Grandy
                                     UNITED STATES BANKRUPTCY JUDGE

---

interests and it shall not be necessary for the holders of such interests to file a proof of interest."  The Court makes no finding at this time as to the effect of that Rule on any objections to claims that the debtor has filed or will file.